UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

JAMAL THOMAS,

                Plaintiff,

v.

MARY HENSE et al.,

                Defendants.

_____/

Case No. 2:23-cv-140

Honorable Maarten Vermaat

## **OPINION**

       This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* in a separate order. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 1, PageID.4.)

       This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

       "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros.,*

*Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim. Further, Plaintiff's motion to appoint counsel (ECF No. 4) will be denied.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan. The events about which he complains, however, occurred at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. Plaintiff sues the following URF medical personnel in

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

their individual and official capacities: Registered Nurses Mary Hense and Unknown Duncan; and Doctor Brenda Buchanan.[2] (Compl., ECF No. 1, PageID.2.)

In Plaintiff's complaint, he states that on October 22, 2021, he had surgery on his right foot "to have a mass tissue removed" at War Memorial Hospital.[3] (*Id.*, PageID.9.) Following the surgery, Plaintiff was provided with instructions regarding the care of his foot by a non-party doctor at the hospital. (*Id.*) According to Plaintiff, "one of the key instructions that was given, was 'do not remove the wrapping from the foot until he is to return to War Memorial Hospital and seen by the doctor who performed the surgery.'" (*Id.*) "Plaintiff was also given a detail for ice and [a] Velcro surgical boot." (*Id.*)

When Plaintiff returned to URF later that same day, he was seen by Defendant Hense, who "unwrapped [his] foot[] to look at it, then re-wrapped it." (*Id.*) Plaintiff states that he was not provided with pain medication, which the non-party doctor at the hospital had prescribed, "nor was he given a wheelchair, nor extra pillow, to keep the foot up." (*Id.*)

---

[2] In the case caption of his complaint, Plaintiff lists the above three individuals as Defendants; however, when describing the named Defendants in the body of his complaint, in addition to these three individuals, Plaintiff states that "unknown-named defendant(s) will be named after further discover[y] is obtained." (Compl., ECF No. 1, PageID.6.) "Summary reference to a single, five-headed 'Defendants' [or staff] does not support a reasonable inference that each Defendant is liable . . . ." *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citation omitted) ("This Court has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008))). And, any intended claims against these unknown Defendant(s) fall far short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure and would be subject to dismissal for failure to state a claim. *See* Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

[3] In this opinion, the Court corrects the spelling and capitalization in quotations from Plaintiff's filings.

4

Two days later, on October 24, 2021, "Plaintiff woke up with severe pain in his foot," and Plaintiff's "toes on the foot that had the surgery were bruised and had swelled up." (*Id.*) Plaintiff described his symptoms to non-party correctional officer Moon, and Plaintiff was then sent to healthcare services. (*Id.*) Upon Plaintiff's arrival at healthcare services, he was seen by a non-party nurse. (*Id.*) Plaintiff described the surgery he had received and his current symptoms. (*Id.*) The non-party nurse removed the bandages from Plaintiff's foot, revealing that Plaintiff's foot had "bad bruising." (*Id.*, PageID.10.) The non-party nurse cleaned Plaintiff's foot, rebandaged it, placed Plaintiff on ibuprofen, and extended Plaintiff's ice detail. (*Id.*)

Plaintiff states that his foot continued to get worse, and on October 31, 2021, Plaintiff advised a non-party unit officer that Plaintiff's foot "felt like it was on fire." (*Id.*) The non-party unit officer contacted healthcare services. (*Id.*) Plaintiff was then sent to healthcare services, and a non-party nurse unwrapped the bandage on Plaintiff's foot and "saw that it was infected." (*Id.*) The non-party nurse gave Plaintiff two antibiotic shots and "more ibuprofen and Tylenol," and extended his ice detail. (*Id.*)

On November 1, 2021, Plaintiff was again sent to healthcare services. (*Id.*) A non-party nurse called non-party nurse practitioner Russo to attend the appointment, and they unwrapped the bandages on Plaintiff's foot. (*Id.*) After non-party nurse practitioner Russo saw Plaintiff's foot, she "prescribed that he be given a wheelchair, crutches, extra pillow, extend[ed] ice detail, and more antibiotics." (*Id.*) Later that same day, the pain in Plaintiff's foot worsened, and "his body was shaking, he was sweating profusely," and he was dizzy (*Id.*, PageID.10–11.) Plaintiff reported his symptoms to a non-party unit officer, and Plaintiff was sent to healthcare services. (*Id.*) Plaintiff was seen by non-parties nurse Rossie and nurse practitioner Russo. (*Id.*, PageID.11.) These non-party providers removed Plaintiff's bandages, and "his foot increased in size." (*Id.*) Plaintiff's

blood pressure "was about 189/105, and he was running a temperature of 101, which caused them to rush[] him to War Memorial Hospital." (*Id.*)

At the hospital, a non-party doctor believed that Plaintiff had a blood clot, and the doctor removed Plaintiff's stitches and drained "the area of the foot that was seriously infected." (*Id.*) The non-party doctor "discussed with the Plaintiff why the whole situation happened which caused him to have to suffer the pain he was in." (*Id.*) Plaintiff alleges that the non-party doctor "stated that the facility should ha[ve] followed the instructions that were given to them after the Plaintiff's surgery, [and] that the bandages shouldn't ha[ve] been removed at all." (*Id.*)

Subsequently, on November 5, 2021, Plaintiff had an appointment with a non-party offsite podiatrist. (*Id.*) Plaintiff claims that the non-party podiatrist "stated after he was informed of everything that had happened and [after] his examination of the foot, that the facilit[y's] action was in violation of the instructions that were sent back with the Plaintiff after his surgery," explaining that "the bandages shouldn't ha[ve] been removed, until informed to do so by the surgeon[,] [a]nd they really shouldn't ha[ve] been removed on the day of surgery." (*Id.*, PageID.11–12.)

Approximately six months later, from May 20, 2022, through June 17, 2022, Plaintiff had daily contact with URF medical staff and Defendant Buchanan "regarding his right foot injury and pain, caused before and after his surgery." (*Id.*, PageID.12.) Plaintiff also sent healthcare request forms to medical about the matter. (*Id.*) At one appointment, Defendant Duncan cleaned Plaintiff's wound on his right foot and applied "'Silvadene' and then bandaged it back up." (*Id.*) "[A] few days after [Defendant] Duncan applied the Silvadene . . . , from May 20, 2022, until May 23, 2022, that is when Defendant Buchanan told Defendant Duncan to stop using the Silvadene," explaining that "it's not used for the infection and it was only irritating the wound, and causing the infection

to become worse." (*Id.*) On May 23, 2022, Defendant Buchanan also determined that Plaintiff's foot was reinfected and Buchanan prescribed "'500mg of Levofloxacin' antibiotics medication." (*Id.*, PageID.13.) After Plaintiff received "the Silvadene and the Levofloxacin medications[,] Plaintiff suffered severe pain in his chest[,] chest tension, dizziness and nausea with a temperature of over 100 degrees." (*Id.*)

On June 6, 2022, Plaintiff went to healthcare services "for a daily dressing change and reported blisters on the plantar and lateral surfaces of his feet." (*Id.*) "Defendant Buchanan discontinued the Levaquin and the unna boot dressing on this date." (*Id.*)

On June 10, 2022, Plaintiff was sent to War Memorial Hospital. (*Id.*) Plaintiff alleges that his right foot was reinfected, "which was stated to have been caused by Defendant Duncan's application of the Silvadene," and "Defendant Buchanan's prescription of Levofloxacin that cause[d] Plaintiff's chest tension, dizziness, nausea, hives, itching, redness, blistered, swelling of the lips, shakiness, muscle pain, trouble walking, not able to focus, memory problems and a temperature over 100 degrees." (*Id.*) At the hospital, Plaintiff was given a prescription for Ultran, a pain medication, but Plaintiff states that "he never received any medication for his pain, nor did he receive[] any detail to receive[] pain medication from the med-window." (*Id.*)

The next day, June 11, 2022, Plaintiff woke up at 5:00 a.m. with pain in both of his feet and both were swollen. (*Id.*) Plaintiff reported the symptoms to the unit officer, and the unit officer called healthcare services. (*Id.*) Plaintiff was told he would have a medical appointment at 8:00 a.m. that same day. (*Id.*)

Based on the foregoing allegations, Plaintiff avers that Defendants violated his rights under the Eighth and Fourteenth Amendments. (*Id.*, PageID.7.) As relief, Plaintiff seeks compensatory, punitive, and nominal damages, as well as injunctive relief. (*Id.*, PageID.14.)

## II.     Motion to Appoint Counsel

Plaintiff filed a motion requesting the appointment of counsel. (ECF No. 4.) Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and has determined that the assistance of counsel is not necessary to the proper presentation of Plaintiff's position. Plaintiff's motion to appoint counsel (ECF No. 4) therefore will be denied.

## III.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility

8

standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.      Official Capacity Claims

Plaintiff sues Defendants in their official and individual capacities. (Compl., ECF No. 1, PageID.2.) A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*,

440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the United States Court of Appeals for the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).

Here, Plaintiff seeks monetary damages and injunctive relief. (Compl., ECF No. 1, PageID.14.) An official capacity defendant is absolutely immune from monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). Therefore, Plaintiff may not seek monetary damages against Defendants in their official capacities, and these claims will be dismissed.

Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking injunctive or declaratory relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). The United States Supreme Court has determined that a suit under *Ex Parte Young* for prospective injunctive relief should not be treated as an action against the state. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority. *Id.*

Nonetheless, the Supreme Court has cautioned that, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581

(6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Here, Plaintiff is no longer confined at URF, which is where he avers that Defendants Hense, Duncan, and Buchanan are employed. The Sixth Circuit has held that transfer to another correctional facility moots a prisoner's injunctive and declaratory claims. *See, e.g.*, *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996). Underlying this rule is the premise that such relief is appropriate only where plaintiff can show a reasonable expectation or demonstrated probability that he is in immediate danger of sustaining direct future injury as the *result* of the challenged official conduct. *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g.*, *id.*; *Alvarez v. City of Chicago*, 649 F. Supp. 43 (N.D. Ill. 1986); *Bruscino v. Carlson*, 654 F. Supp. 609, 614, 618 (S.D. Ill. 1987), *aff'd*, 854 F.2d 162 (7th Cir. 1988); *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974).

Plaintiff is now incarcerated at KCF, and Defendants Hense, Duncan, and Buchanan are not employed at that correctional facility. Therefore, Plaintiff cannot maintain his claims for injunctive relief against Defendants, and the Court will dismiss these claims.[4]

Accordingly, for the reasons set forth above, Plaintiff's official capacity claims against Defendants will be dismissed.

---

[4] Moreover, Plaintiff does not allege the existence of an official policy or practice, or suggest that the activities alleged in the complaint are likely to occur again. In fact, Plaintiff complains about events that occurred more than one year ago. Plaintiff's allegations relate solely to past harm, not future risk of harm. Therefore, Plaintiff does not seek relief properly characterized as prospective, and his claims for injunctive relief are subject to dismissal for that reason as well. *See Ladd*, 971 F.3d at 581.

### B.     Eighth Amendment Claims

Plaintiff alleges that Defendants Hense, Duncan, and Buchanan violated his Eighth Amendment rights by providing inadequate medical care for his right foot following surgery that he received at an offsite hospital. (*See* Compl., ECF No. 1, PageID.7.)

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be

consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the United States Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v.*

*Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, . . . he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). The prisoner must show that the care the prisoner received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

### 1.    Objective Component

Plaintiff alleges that following surgery on his right foot, the wound became infected, and he experienced pain and other symptoms related to the infection. (*See, e.g.*, Compl., ECF No. 1, PageID.9–13.) Plaintiff further alleges that he was brought to an offsite hospital on two occasions

14

to address these symptoms. (*See id.*, PageID.11, 13.) At this stage of the proceedings, the Court assumes, without deciding, that Plaintiff has alleged sufficient facts to show a serious medical condition.

### 2. Subjective Component

#### a. Defendant Hense

In this action, Plaintiff alleges that following his foot surgery "to have a mass tissue removed" on October 22, 2021, he returned to URF and was seen by Defendant Hense. (*See id.*, PageID.9.) Plaintiff states that Defendant Hense "unwrapped [his] foot[] to look at it, then re-wrapped it." (*Id.*) Plaintiff claims that he was not provided with pain medication, which the non-party doctor at the hospital had prescribed, "nor was he given a wheelchair, nor extra pillow, to keep the foot up." (*Id.*) Plaintiff does not allege that he had any further interaction with Defendant Hense.

As an initial matter, with respect to Plaintiff's allegation that he was not given pain medication that a non-party doctor at the hospital had prescribed, Plaintiff does not allege that anyone at URF, let alone Defendant Hense, knew about the outside provider's recommendation for pain medication. Further, after Plaintiff was not provided with the pain medication that he believed he should have received, Plaintiff does not allege that he told Defendant Hense or anyone else about his need for pain medication. Under these circumstances, Plaintiff has failed to allege sufficient facts to show that Defendant Hense knowingly disregarded a substantial risk of harm to Plaintiff by not providing him with pain medication during their sole interaction on October 22, 2021. And, regardless, "a prison physician's [or other medical provider's] decision to reject another doctor's treatment recommendation in favor of his [or her] own 'does not amount to deliberate indifference where both recommendations are made by qualified medical professionals' and the prison doctor's [or other medical provider's] decision [wa]s made for a medical reason."

*Lloyd v. Moats*, 721 F. App'x 490, 495 (7th Cir. 2017) (citing *Shields v. Ill. Dep't of Corr.*, 746
F.3d 782, 797 (7th Cir. 2014); *Perez v. Fenoglio*, 792 F.3d 768, 778 (7th Cir. 2015)); *see, e.g.*,
*Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (finding that "inmates have no
constitutional right to receive a particular or requested course of treatment, and prison doctors
remain free to exercise independent medical judgment" (citation omitted)). Here, Defendant Hense
examined Plaintiff's foot, and based on that examination, Defendant Hense made her own
determination regarding Plaintiff's need, or lack thereof, for pain medication on October 22, 2021.
Plaintiff does not allege that Defendant Hense had any further involvement in Plaintiff's medical
care, and he fails to allege any facts to suggest that Defendant Hense prevented Plaintiff from
receiving pain medication following their sole interaction on October 22, 2021. *See Frazier v.
Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint
did not allege with any degree of specificity which of the named defendants were personally
involved in or responsible for each alleged violation of rights).

As to Plaintiff's belief that he should have received a wheelchair and an extra pillow,
Plaintiff does not allege that the non-party doctor at the hospital prescribed these measures[5];
instead, Plaintiff's allegations suggest that Plaintiff simply wanted to have these items. (*See*
Compl., ECF No. 1, PageID.9.) Specifically, Plaintiff alleges that Defendant Hense examined
Plaintiff's foot after he returned to URF following the foot surgery, and Plaintiff faults Defendant
Hense for not providing Plaintiff with a wheelchair and an extra pillow at that time. (*See id.*)
However, Plaintiff does not allege that Defendant Hense had any knowledge that Plaintiff wanted
these items or that Defendant Hense thought Plaintiff should receive these item, but chose not to

---

[5] Plaintiff states that he was "given a detail for ice and [a] velcro surgical boot" at the hospital;
however, Plaintiff does not allege that he was unable to obtain these items. (Compl., ECF No. 1,
PageID.9.)

provide them to him. Instead, it is apparent that Plaintiff simply disagreed with Defendant Hense's determination about Plaintiff's needs following surgery; but, "a patient's disagreement with his physicians [or other medical providers] over the proper course of treatment alleges, at most, a medical-malpractice claim, which is not cognizable under § 1983." *Darrah*, 865 F.3d at 372 (citations omitted); *Mitchell*, 553 F. App'x at 605 ("[A] desire for additional or different treatment does not suffice by itself to support an Eighth Amendment claim." (citations omitted)).

Following Plaintiff's sole interaction with Defendant Hense on October 22, 2021, Plaintiff alleges that he experienced "severe pain in his foot," and from October 24, 2021, through November 1, 2021, Plaintiff verbally reported his symptoms and submitted medical care kites about the matter. (Compl., ECF No. 1, PageID.9–11.) In response, Plaintiff was seen by various non-party medical providers at URF. (*See id.*) At these appointments, the non-party medical providers unwrapped the bandages on Plaintiff's foot to allow them to examine the foot and then rebandaged his foot following their examinations. (*See id.*)

On November 1, 2021, non-party medical providers at URF determined that Plaintiff should be sent to the hospital because his blood pressure was elevated, his temperature was 101 degrees, and his foot was swollen. (*Id.*, PageID.11.) At the hospital, a non-party doctor believed that Plaintiff had a blood clot, and the doctor drained "the area of the foot that was seriously infected." (*Id.*) Plaintiff alleges that the non-party doctor "stated that the facility should have followed the instructions that were given to them after the Plaintiff's surgery, [and] that the bandages shouldn't ha[ve] been removed at all." (*Id.*) Plaintiff also alleges that during a November 5, 2021, appointment with a non-party offsite podiatrist, the podiatrist stated that "the bandages shouldn't ha[ve] been removed, until informed to do so by the surgeon[,] [a]nd they really shouldn't ha[ve] been removed on the day of surgery." (*Id.*, PageID.11–12.)

To the extent that Plaintiff intended to claim that Defendant Hense provided inadequate medical care because Hense removed Plaintiff's bandages on October 22, 2021, to examine Plaintiff's foot and then rebandaged his foot following her examination, as explained below, Plaintiff fails to state a claim. As an initial matter, Plaintiff's only appointment with Defendant Hense occurred on October 22, 2021. A claimed constitutional violation must be based upon active unconstitutional behavior, *see Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002), and Defendant Hense therefore cannot be held liable for medical care that Plaintiff received from non-party medical providers following his sole interaction with Defendant Hense. *See Iqbal*, 556 U.S. at 676 (discussing that government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).

Furthermore, Plaintiff does not allege that Defendant Hense or any of the other non-party medical providers at URF removed his bandages and then did not allow Plaintiff to have any bandages. To the contrary, Plaintiff's own allegations show that various medical providers, including Defendant Hense, unbandaged Plaintiff's foot to allow them to examine it and then rebandaged it following their examinations. It is clear that Plaintiff disagrees with Defendant Hense's medical determination that she needed to remove the bandages in order to assess Plaintiff's foot; however, as explained above, a patient's disagreement with a medical provider's course of treatment does not state a constitutional claim. *See Darrah*, 865 F.3d at 372 (citations omitted); *Mitchell*, 553 F. App'x at 605. Moreover, to the extent that the non-party offsite doctor specifically recommended that the bandages not even be removed to allow examination of the foot, when medical providers, such as Defendant Hense, use their own medical judgment, then they are

18

"free to devise [their] own treatment plan" and need not follow another medical provider's recommendations. *Lloyd*, 721 F. App'x at 495 (citing *Holloway v. Del. Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012)).

Accordingly, for the reasons set forth above, Plaintiff has failed to show that Defendant Hense was deliberately indifferent to Plaintiff's serious medical needs, and Plaintiff's Eighth Amendment claims against Defendant Hense will be dismissed.

**b.      Defendants Duncan and Buchanan**

With respect to Defendants Duncan and Buchanan, Plaintiff alleges that he first had contact with them on May 20, 2022. (Compl., ECF No. 1, PageID.12.) Plaintiff provides no factual allegations about the condition of his foot from November 5, 2021—the date on which Plaintiff alleges he an appointment with an offsite podiatrist—until May of 2022. (*See id.*, PageID.11–12.) Regardless, Plaintiff alleges that starting on May 20, 2022, through June 17, 2022, he had daily contact with URF medical staff and Defendant Buchanan "regarding his right foot injury and pain, caused before and after his surgery." (*Id.*, PageID.12.)

At an appointment on an unspecified date, Defendant Duncan cleaned Plaintiff's wound, applied "'Silvadene[,]' and then bandaged it back up." (*Id.*) Plaintiff claims that this irritated his wound, and that on May 23, 2022, Defendant Buchanan told Defendant Duncan not to use Silvadene, explaining that "it's not used for the infection . . . and [it was] causing the infection to become worse." (*Id.*) On that same date, May 23, 2022, Defendant Buchanan determined that Plaintiff's foot was reinfected and Buchanan prescribed "'500mg of Levofloxacin' antibiotics medication." (*Id.*, PageID.13.) Plaintiff claims that after he received "the Silvadene and the Levofloxacin medications[,] Plaintiff suffered severe pain in his chest[,] chest tension, dizziness and nausea with a temperature of over 100 degrees." (*Id.*) On June 6, 2022, Plaintiff went to healthcare services "for a daily dressing change and reported blisters on the plantar and lateral

surfaces of his feet." (*Id.*) At that time, "Defendant Buchanan discontinued the Levaquin and the unna boot dressing." (*Id.*) Plaintiff was then sent to the offsite hospital on June 10, 2022, and Plaintiff alleges that his right foot was reinfected, "which was stated to have been caused by Defendant Duncan's application of the Silvadene." (*Id.*) At the hospital, Plaintiff was given a prescription for Ultran, a pain medication, but Plaintiff states that "he never received any medication for his pain, nor did he receive[] any detail to receive[] pain medication from the med-window." (*Id.*)

As an initial matter, although it is clear that Plaintiff disagreed with Defendant Duncan's and Defendant Buchanan's treatment decisions, Plaintiff's disagreement with Defendants' treatment decisions is insufficient to state an Eighth Amendment claim. *See Darrah*, 865 F.3d at 372 (citations omitted); *Mitchell*, 553 F. App'x at 605. Furthermore, with respect to Plaintiff's allegation that he had side effects from the medications that Defendants Duncan and Buchanan prescribed, "the prescribing of drugs by a physician[, or other medical provider,] which causes side effects does not constitute deliberate indifference." *Mason v. Eddy*, No. 1:18-cv-2968, 2019 WL 3766804, at *11 (N.D. Ohio Aug. 9, 2019) (citations omitted); *see, e.g.*, *Walker v. Abdellatif*, No. 1:07-cv-1267, 2009 WL 579394, at *7 (W.D. Mich. Mar. 5, 2009) (discussing that "medication adjustments involve the doctor's medical judgment regarding plaintiff's treatment," and a plaintiff's "disagreement with the health care providers regarding his diagnosis and treatment does not rise to the level of a federal constitutional violation" (citations omitted)); *Christensen v. United States*, No. 5:11-321-KKC, 2013 WL 4521040, at *4 (E.D. Ky. Aug. 26, 2013) (discussing that the doctor's "decision to continue [the inmate's] prescription for [medication that caused side effects] was evidently based upon her medical judgment that its benefits to his long-term cardiac health outweighed its detrimental side effects").

Moreover, as to Defendant Duncan's use of Silvadene on Plaintiff's wound, Plaintiff claims that Defendant Buchanan told Duncan not to use Silvadene after Duncan had used it on Plaintiff's foot, explaining that "it's not used for the infection . . . ." (Compl., ECF No. 1, PageID.12.) Plaintiff does not allege that Defendant Duncan knew that Silvadene would not help his foot but used it anyway. Indeed, based on the facts alleged by Plaintiff it appears that Defendant Duncan thought that Silvadene was appropriate for Plaintiff's wound, but then Defendant Buchanan later told Duncan not to use it. (*See id.*) Under these circumstances, Plaintiff fails to allege sufficient facts to show that Defendant Duncan was deliberately indifferent to Plaintiff's health and safety when she used the Silvadene. *See Farmer*, 511 U.S. at 835 (holding that an Eighth Amendment violation requires a "state of mind more blameworthy than negligence").

Finally, as to Plaintiff's claim that he did not receive the pain medication that he was prescribed during his June 10, 2022, hospital visit, Plaintiff fails to allege any facts suggesting that Defendants had any involvement in his receipt of this pain medication. Indeed, Plaintiff fails to name any Defendants with respect to his claims regarding the failure to provide him the pain medication that was prescribed on June 10, 2022. Under these circumstances, Plaintiff has failed to allege any facts showing that Defendants were involved in the alleged violation of his constitutional rights with respect to his receipt of this prescription. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *see also Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

In summary, Plaintiff has failed to show that Defendants Duncan and Buchanan were deliberately indifferent or that his treatment was "so woefully inadequate as to amount to no

treatment at all." *Mitchell*, 553 F. App'x at 605 (citation omitted). Accordingly, for all of the reasons set forth above, Plaintiff's Eighth Amendment claims against Defendants Duncan and Buchanan will be dismissed.

### C.    Fourteenth Amendment Claims

Without providing any explanation, Plaintiff references the Fourteenth Amendment when listing the constitutional amendments that he alleges Defendants violated, stating, in sum:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive[] any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the law.

(*See* Compl., ECF No. 1, PageID.7.) Liberally construing Plaintiff's complaint, as the Court is required to do, the Court addresses whether Plaintiff states a claim under the Privileges or Immunities Clause, the Due Process Clause, and the Equal Protection Clause of the Fourteenth Amendment.

### 1.    Privileges or Immunities Clause

The Privileges or Immunities Clause of the Fourteenth Amendment provides that "[n]o State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States." U.S. Const. amend. XIV, § 1. "[T]he privileges or immunities of national citizenship to which [the clause] refers have been construed narrowly, extending to the right to petition Congress, to vote for national officers, to enter public lands, to be protected against violence while in the custody of a United States Marshal[], and to inform federal authorities of the violation of federal law." *Snyder v. Smith*, 7 F. Supp. 3d 842, 857 (S.D. Ind. 2014) (citing *Murphy v. Mount Carmel High Sch.*, 543 F.2d 1189, 1192 n.2 (7th Cir. 1976); *Saenz v. Roe*, 526 U.S. 489, 502 (1999)); *see also Slaughter–House Cases*, 83 U.S. 36 (1872).

Plaintiff fails to allege any facts describing how Defendants violated his rights under the Privileges or Immunities Clause of the Fourteenth Amendment, much less any facts suggesting that Defendants' alleged actions had any bearing on Plaintiff's national citizenship rights. Accordingly, Plaintiff fails to state a claim under the Privileges or Immunities Clause of the Fourteenth Amendment, and this claim will be dismissed.

### 2.      Due Process Clause

To the extent that Plaintiff intended to bring a procedural due process claim, Plaintiff fails to state such a claim. To demonstrate a violation of procedural due process, a plaintiff must prove the following elements: (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). Here, Plaintiff's right to receive medical care is not the type of interest afforded protection by procedural due process. *See DeShaney v. Winebago Cnty. Dept. of Soc. Servs.*, 489 U.S. 189 (1989). Instead, the Sixth Circuit Court of Appeals has recognized that, to the extent the right to medical care is a due process right, it is "a substantive due process right . . . ." *Colson v. City of Alcoa, Tenn.*, 37 F.4th 1182, 1187 (6th Cir. 2022).

"Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting

23

*Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)).

However, "[w]here a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273–75 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)). If such an amendment exists, the substantive due process claim is properly dismissed. *See Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013). In this case, the Eighth Amendment applies to protect Plaintiff's right to receive medical care. *See supra* Section III.B. Furthermore, nothing in the complaint suggests that Defendants engaged in the sort of egregious conduct that would support a substantive due process claim. Consequently, any intended substantive due process claim will be dismissed.

Accordingly, for all of the reasons set forth above, any intended procedural and substantive due process claims will be dismissed.

### 3.    Equal Protection Clause

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection claim, Plaintiff must show "intentional and arbitrary discrimination" by the state; that is, he must show that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). Further, "'[s]imilarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)).

Here, Plaintiff fails to allege any facts to suggest that he was treated differently than others, let alone that the others were similarly situated. Instead, any allegations of discriminatory treatment are wholly conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Furthermore, even viewing Plaintiff's equal protection claim as a class-of-one claim, the Court would reach the same conclusion because Plaintiff's equal protection claims are wholly conclusory and he has alleged no facts that plausibly suggest that his equal protection rights were violated.

Accordingly, any intended Fourteenth Amendment equal protection claims will be dismissed.

## Conclusion

As set forth above, the Court will deny Plaintiff's motion to appoint counsel. (ECF No. 4) Further, having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should

Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated:  November 20, 2023                          /s/ *Maarten Vermaat*
                                                    Maarten Vermaat
                                                    United States Magistrate Judge